UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CR128 AGF |
| | ) | |
| LAWRENCE EDWARD WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed a motion to suppress physical evidence and a motion to dismiss indictment, and the Government filed responses thereto. On March 6, 2014, the undersigned held a hearing on Defendant's motions, and on March 14, 2014 ordered a transcript of the hearing. Upon the filing of the transcript, the undersigned entered a briefing schedule, and the parties filed their post-hearing briefs on March 24, 2014.

**#57--Motion to Dismiss Indictment**

In this motion, the Defendant alleges first, that the Second Amendment to the United States Constitution gives the Defendant the right to bear arms. He alleges that Title 18, United States Code, 922(g)(1) deprives the Defendant of his right to bear arms for the rest of his life as a convicted felon, and is, therefore, unconstitutional. Defendant next alleges that the indictment, in alleging that Williams possessed a firearm that had previously traveled in interstate commerce, is insufficient to make enactment of 18 U.S.C. 922(g)(1) a valid exercise of congressional power under the Commerce Clause. The undersigned concludes that the Defendant must fail as to each of these contentions.

First, as to the Second Amendment claim, this argument was evaluated in <u>United States v. Seay</u>, 620 F.3d 919 (8th Cir. 2010). In <u>Seay</u>, the defendant alleged that 922(g)'s ban on firearm possession was facially unconstitutional following the Supreme Court's decision in <u>District of Columbia v. Heller</u>, 128 S.Ct. 2783 (2008). The defendant claimed that the <u>Heller</u> decision granted him the right to keep and bear arms as a fundamental constitutional right. The Court, however, in striking down the District of Columbia's handgun possession law stated that many other laws which restricted gun possession would likely remain constitutional. In doing so, the Court stated as follows:

> Like most rights, the right secured by the Second Amendment is not unlimited. . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

128 S.Ct. at 2816-2817.

In addition, in <u>Seay</u>, the Eighth Circuit Court of Appeals upheld the constitutionality of 922(g) against a Second Amendment challenge citing numerous cases from other circuits, including similar opinions from the Seventh, Eleventh, Fourth, Third, and now the Eighth Circuit, which have all held 922(g) to be constitutional.

Additionally, in <u>United States v. Joos</u>, 638 F.3d 581 (8th Cir. 2011), the Court held that 922(g) was lawfully promulgated under the Commerce Clause both when challenged on its face and as applied in a specific indictment. In holding that 922(g) is constitutional as applied and facially, the Court stated as follows:

> Turning first to Joos' facial attack on the statutes of conviction, it is well settled that Congress did not violate the Second Amendment or exceed its authority under the Commerce Clause when enacting § 842(i) and § 922(g), and Joos' arguments to the

2

contrary are foreclosed by our prior decisions. . .Joos' as applied constitutional challenges do not fare any better.

638 F.3d at 586.

Thus, based on the above, the undersigned concludes that the Defendant's motion to dismiss should be denied.

**#56--Motion to Suppress Physical Evidence**

Based upon the evidence adduced at the hearing, a review of the transcript in this matter as well as the post-hearing briefs, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Jennifer Hendricks is a police officer with the Metropolitan St. Louis Police Department. On January 26, 2013, she was on patrol in the fourth police district in the City of St. Louis. At that time she was driving a marked police vehicle equipped with a license plate recognition system or LPR. The license plate recognition system is a computer assisted device with a camera which reads and interprets license plates of other vehicles, and because it is connected to the warrant and wanted section of the police department, it causes an alert to be sent to the officer if any active warrants or wanteds are active on the vehicle. It gives an alert by way of a computer screen on the inside of the vehicle which is generated and operated by cameras on the exterior of the car which takes pictures of the license plate.[1]

---

[1] The Defendant apparently attempts to show that the License Plate Recognition System is somehow inherently unreliable. Although the recognition system allows an officer to check many more vehicles than the officer would normally be able to do by manually checking them against a computer entry or hot sheet, it is materially no different than computer entries or hot sheets. In the

3

Some time around 4 to 5 o'clock in the afternoon on January 26, 2013, Officer Hendricks received an alert on a vehicle in the area of 12th and Cole Streets in the City of St. Louis. When she checked her computer screen, the hit showed that the car and an individual named Otis Hicks, who was perhaps associated with the car, were wanted by the St. Louis County police for the crime of domestic assault first degree. The wanted was headed with the terms "armed and dangerous," and the detail of the wanted indicated that Mr. Hicks "may be armed with a small caliber silver revolver handgun used in the crime." Because of this, Hendricks informed her dispatcher that she was going to stop the vehicle to conduct an investigation indicated by the wanted and determine if Hicks was in the vehicle. Because of the nature of the stop, she requested that backup be sent to assist her. She then activated her emergency lights, and the vehicle pulled to the curb. She approached the vehicle and asked the driver for his driver's license and registration. He identified himself as Otis Hicks, and gave the driver's license to Hendricks. While obtaining the driver's license, she observed that there was a second passenger in the vehicle seated on the passenger side of the front seat. Because her backup had not arrived, and because she feared that one or more of the occupants of the car may be armed based on the report, she returned to her vehicle and waited for the assist officer.

The assist officer was David Christianson, and when he arrived, they both approached the vehicle. She told the person who she identified as Otis Hicks to exit the vehicle. She then placed him under arrest pursuant to the wanted charge and handcuffed him. Officer Christianson, approached

---

instant case, the officer could have observed the plate through the front window of her vehicle, and consulted a hot sheet, which she then could have confirmed with the dispatcher. The fact that this was all done automatically by camera-reading equipment and a computer does not make this any less reliable. The use of this technology does not vitiate the legality of the wanted issued by the St. Louis County Police Department or of the reasonable suspicion based on the wanted which allowed the stop. In fact, in this case, the warrant was confirmed by traditional means at the police station, and is, thus, accurate.

the passenger side, and asked the Defendant to exit the vehicle. He did so for his safety because the report showed that the wanted subject was potentially armed and dangerous and, at that point, he was unaware which subject was Otis Hicks. In addition, the undersigned concludes that the fact that they were together in the same vehicle at the same time and one of them was wanted for the crime of domestic assault first degree with a weapon raised the possibility that the Defendant would also have a weapon, or that a weapon would be in the car. As Mr. Williams tried to retrieve his driver's license, Officer Christianson noted that the Defendant's hands were shaking uncontrollably and he appeared to be extremely nervous. In addition, he kept touching his right hand pocket even when told not to do so twice by the officer. Because of the Defendant's nervousness, his touching of the pocket, and the fact that, at the very least, the person who was sitting in the front seat of the car was known to be armed and dangerous, the Defendant was immediately handcuffed by Christianson and subjected to a pat down search. During the pat down search, Christianson felt a metal handle which he immediately believed to be a handgun. He removed the weapon from the Defendant's pocket, finding it to be a fully-loaded 9mm. semiautomatic pistol. After placing the Defendant in full custodial arrest for unlawful use of a weapon, Christianson conducted a full search of the Defendant's person retrieving from his pockets some white rock type substances which appeared to be cocaine base. The Defendant was then arrested and taken to the station. He evidently did not make any statements.

## Discussion

Based on the above, the undersigned concludes that the initial stop of the individuals and the eventual pat-down search of the Defendant and the discovery of the weapon were lawful. In United States v. Hensley, 469 U.S. 221 (1985) (a case similar to the one now at bar), the Court upheld a Terry stop based on a "wanted flyer" issued by the Cincinnati police department. The "wanted flyer"

said that two men, including Hensley, were wanted for investigation of a robbery in Ohio. It described Hensley and the date and location of the robbery. Less than 12 days later, police officers from Covington, Kentucky (a suburb of Cincinnati) observed Hensley driving a white Cadillac. A Covington police officer stopped the car using emergency lights on his vehicle. The officer approached the car and ordered both men to exit the vehicle. When one individual got out of the passenger side of the vehicle, the officer observed, through the open door, a handgun protruding from underneath the passenger seat of the vehicle. A further search of the vehicle based on the arrest, revealed two other loaded handguns in other places in the car. Both Hensley and his passenger were arrested and eventually indicted and convicted in federal court in Kentucky for being felons in possession of firearms.

In holding that Terry stops apply to both crimes that have been already completed as well as criminal activity that is ongoing, such as the possession of a firearm, the Court stated as follows:

> Despite these differences, where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.

Hensley, 469 U.S. 221, 229.

In holding that the wanted for investigation report provided by one police department but used by other police departments and the reliance on the report is sufficient to support reasonable suspicion, the Court stated as follows:

> The law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal. The same interests that weigh in favor of permitting police to make a *Terry* stop to investigate a past crime, *supra*, at 681, support permitting police in other jurisdictions to rely on flyers or bulletins in making stops to investigate past crimes.
>
> We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification... to pose questions to the person, or detain the person briefly while attempting to obtain further information. . .It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it. Cf. *Terry,* 392 U.S., at 21-22, 88 S.Ct., at 1879-1880 ("it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?").

469 U.S. 221, 232, 233.

And finally, in finding that the stop was lawful, the Court stated that the seizure of the weapon from the vehicle was also legal:

> Having stopped Hensley, the Covington police were entitled to seize evidence revealed in plain view in the course of a lawful stop, to arrest Hensley's passenger when evidence discovered in plain view gave probable cause to believe the passenger had committed a crime, . . . and subsequently to search the passenger compartment of the car because it was within the passenger's immediate control. . . Finally, having discovered additional weapons in Hensley's car during the course of a lawful search, the Covington officers had probable cause to arrest Hensley himself for possession of the firearms.

469 U.S. 221, 235, 236.

In United States v. Grigg, 498 F.3d 1070 (9th Cir. 2007), the Court held that a Terry stop may be justified not just by felony wanteds, but also by wanteds from other jurisdictions involving misdemeanors that implicate public safety. In addition, in United States v. Moran, 503 F.3d 1135 (10th Cir. 2007), the Court held that the completed misdemeanor crime of trespass justified a Terry stop to investigate this completed misdemeanor crime.

7

Based on the above, the undersigned concludes that the stop of the vehicle is a lawful <u>Terry</u> stop. Based on the alert from the St. Louis County Police Department, Officer Hendricks was aware that both the vehicle which Otis Hicks was driving and Otis Hicks himself were associated with an offense that had occurred--that offense being domestic assault first degree. She was further aware of the name of the person sought for that offense (Otis Hicks), and was aware from the bulletin that the person used a small silver handgun in the commission of the assault first degree. Further, the report implicated a crime involving the physical safety of another person plus an assault on that person with a deadly and dangerous weapon. Therefore, the undersigned concludes that there was ample reasonable suspicion to stop the vehicle to further investigate the matter. During the stop, the individuals in the vehicle could be asked for their names and identification, and they could be ordered from the vehicle. This would apply to both the driver and the passenger, as at the time the passenger side was approached by Officer Christianson, he was unaware that the driver had been identified as the person wanted in the crime. In addition, there were two individuals in the vehicle, and the vehicle itself was also entered on the wanted alert even though it was not registered to Otis Hicks. Therefore, it would not be unreasonable for either officer to assume loaded weapons would be either in the vehicle or on the person of either individual who occupied the vehicle. The undersigned, therefore, concludes that both the driver and passenger of the vehicle could be ordered to exit the car and asked a brief number of questions necessary to identify them. <u>See</u> <u>Maryland v. Wilson</u>, 519 U.S. 408 (1996); <u>Pennsylvania v. Mims</u>, 504 U.S. 106 (1977). This is so, according to <u>Wilson</u>, <u>supra</u>, and <u>Mims</u>, <u>supra</u>, because the safety of police officers can be directly implicated when there is a traffic stop and more than one individual is present in a vehicle during the stop.

In addition, a police officer who makes an investigative stop may conduct a limited pat-down or frisk of a suspect's outer clothing. The frisk must be conducted only if the officer has a reasonable belief that the detainee poses a threat to the officer's safety or the safety of another. Its scope must be limited to a search for weapons, it may not be used to search for evidence of criminal activity. See Terry v. Ohio, 392 U.S. 1 27, 30 (1968). See also, United States v. Preston, 685 F.3d 690-91, (8th Cir. 2012) (case involves a frisk of a rear passenger during a traffic stop which was developed after obtaining information from the rear seat passenger, and ordering him to get out of the vehicle). In the case now at bar, the undersigned concludes that the officers had sufficient reason to suspect that the Defendant posed a threat to officers' safety, or the safety of others,   Initially, the undersigned notes that the car as well as its driver were each listed on the wanted as being involved in the commission of the first degree assault. The Defendant was a passenger in this car. In addition, the crime for which the car was stopped involved the use of firearms. When the officer asked the Defendant for his identification, the Defendant's hands shook uncontrollably, and he kept reaching toward his side and touching it, even when he was told not to do this. The undersigned concludes that all of this gave the officer a reasonable belief, based on his experience, that the Defendant may well be reaching for a concealed handgun. Based on this reasonable belief, the officer handcuffed the Defendant and quickly patted him down, feeling the butt of a gun. Therefore, as in Terry and Preston, the undersigned concludes that the officer had a reasonable belief that the Defendant posed a threat to him and to the other officer and anyone else in the area. Therefore, the discovery of the gun was lawful.

The undersigned further concludes that placing the Defendant in handcuffs just prior to the frisk did not convert the stop into a full custodial arrest no matter how it was characterized by Officer

Christianson. During a Terry stop, officers may ask the defendant questions to confirm or dispel their suspicions for the stop. Florida v. Royer, 460 U.S. 491 (1983). Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their personal safety and maintain the status quo during the stop. United States v. Hensley, 469 U.S. 221 (1985). In United States v. Lego, 855 F.2d 542 (8th Cir. 1988), defendants were ordered out of the car at gunpoint, and placed in the backseat of the police vehicle. In United States v. Gil, 204 F.3d 1347 (11th Cir. 2000), the defendant was detained at gunpoint, placed in handcuffs, and placed in the rear seat of a police vehicle for a significant period of time while a search warrant was being executed at a second location. In upholding the length and intrusiveness of the stop, the Court stated as follows:

> Finally, we must consider the "actual scope of the intrusion." *Id.* at 760. Here, Ms. Gil was handcuffed and placed in the back of a police car; although this is a severe form of intrusion, we conclude its necessity was supported by the circumstances. Ms. Gil was not searched at the scene because there was not a female officer available to conduct that search. . .Therefore, to maintain the safety of the officers and the ongoing investigation of the residence, handcuffing Ms. Gil and detaining her in the back of the police car was reasonable.

204 F.3d 1347, 1351. Further, in United States v. McMurray, 34 F.3d 1405 (8th Cir. 1994), police officers stopped a person recently suspected of drug dealing, held him at gunpoint and ordered him to move back into his motel room where they then conducted the frisk. This procedure was upheld as necessary to maintain the status quo and to protect the personal safety of the police officers and other individuals.

Based on the above, the undersigned concludes that the handcuffing of the Defendant in this case for a brief period of time did not convert the stop into a full scale arrest for the purposes of conducting the frisk. In this case, the officer was aware that the nature of the stop itself was

inherently dangerous because of the armed and dangerous heading on the bulletin. In addition, the Defendant's hands were shaking, he was nervous, and he kept patting an area of his waist where, based on the experience of Officer Christianson, he believed the Defendant to possibly have a concealed firearm. Based on these reasonable conclusions, Christianson was acting reasonably in subjecting the Defendant to handcuffs before patting down the Defendant and immediately feeling the butt of a gun. Therefore, the undersigned concludes the use of handcuffs under these circumstances was reasonable, and did not convert the Terry stop into a full scale arrest.

## Conclusion

Therefore, the undersigned finds that the evidence should not be suppressed.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Physical Evidence [ECF No. 56] and the Motion to Dismiss [ECF No. 57] be **denied**.

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  24th  day of April, 2014.