UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CR00128AGF |
| | ) | |
| LAWRENCE EDWARD WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant's pretrial motions. All pretrial motions were referred to United States Magistrate Judge Terry I. Adelman under 28 U.S.C. ' 636(b). Defendant Lawrence Edward Williams filed a Motion to Suppress Physical Evidence (Doc. No. 56); and a Motion to Dismiss the Indictment (Doc. No. 57).

A hearing was held on March 6, 2014, at which the two arresting officers, Officers Jennifer Hendricks and David Christianson, testified. The parties were given the opportunity to file post-hearing memoranda, and Defendant filed a memorandum addressing only the motion to suppress evidence. (Doc. No. 75.) Judge Adelman thereafter issued a Memorandum and Recommendation (the "M&R"), recommending that Defendant's motions to suppress and to dismiss be denied. (Doc. No. 79.) Defendant filed Objections to the M&R, to which the United States responded.

In his objections, Defendant argues that (i) the stop of the vehicle in which Defendant was a passenger was unlawful because the officer lacked reasonable suspicion, further contending that stopping a vehicle based on a license plate recognition system

without first verifying that the alert is still valid is impermissible under the Fourth Amendment; (ii) it was unreasonable to take Defendant to the station to confirm whether the arrest warrant was still active and valid, asserting that an NCIC check is not sufficient; (iii) the M&R mistakenly relied on *Hensley* as authority because the officer here did not know that the wanted individual, Hicks, was driving the car before the stop; and (iv) the evidence does not support the finding in the M&R that Defendant kept touching his right hand pocket after being told not to do so. Defendant makes no specific objections to the recommendation with respect to the motion to dismiss, stating that the objection is made to preserve the issue for appeal.

When a party objects to a report and recommendation concerning a motion to suppress or to dismiss in a criminal case, the court is required to A>make a de novo determination of those portions of the record or specified proposed findings or recommendations to which objection is made.=@ *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. ' 636(b)(1)).

The Court conducted a *de novo* review of the motion to suppress and the motion to dismiss, including listening to the testimony of the witnesses, reviewing the transcript of the hearing, and reviewing the exhibits introduced at the hearing. Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings (except with respect to one matter, addressed below) and correctly analyzed the issues. The Court therefore adopts and incorporates the thorough factual findings, except as noted, and the legal reasoning in the M&R.

### A. Motion to Suppress

With respect to the motion to suppress, the Court agrees with the Magistrate Judge that the officer had reasonable suspicion to stop the car in which Defendant was a passenger. It is clear from the record that while on patrol in a marked police vehicle equipped with a license plate recognition system ("LPR"), Officer Hendricks, an officer with the Metropolitan St. Louis Police Department, received an alert showing that both the car and an individual named Otis Hicks, who was perhaps associated with the car, were wanted by the St. Louis County police for the crime of domestic assault first. The alert bore the heading "armed and dangerous," and indicated that Hicks might be "armed with a small caliber silver revolver handgun used in the crime." Officer Hendricks therefore conducted a traffic stop, and after determining Hicks was the driver, called for backup. After Officer Christianson arrived to provide backup, Officer Hendricks approached the driver, Hicks, and placed him in handcuffs, while Officer Christianson approached Defendant, who was a passenger in the front seat.

The Court is not persuaded by Defendant's assertion that Officer Hendricks lacked reasonable suspicion to stop the car because she could not see who was driving and did nothing to confirm Hicks might be in the car before stopping it. Here, Officer Hendricks did not just receive an alert on Hicks; she received an alert identifying both the car and Hicks, indicating that Hicks was wanted by another police department. In his objections, Defendant contends that the stop was unreasonable in part because a stop based on an LPR alert is subject to an incorrect reading of the license plate. But the record is clear in this case that Hicks' car was in front of the Officer, and before she pulled the car over she

3

visually confirmed that the license plate number and the state matched the information provided on the alert. She first approached the car to see who was driving, and only after determining that it was a man, she asked for identification. She did not further detain the car until she determined from the driver's license that the individual driving the car was in fact Hicks – the individual wanted by St. Louis County police.

The Court also rejects Defendant's assertion that the officer lacked reasonable suspicion to pull the car over based on the alert, without first confirming that the warrant or wanted showing in the computer was still active. Defendant cites no relevant case law for this proposition, and the Court agrees with the Magistrate Judge that reliance on the computer alert – without confirming it is in fact both correct and still active – is sufficient under *United States v. Hensley*, 469 U.S. 221, 232-33 (1985). *See, United States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011) (recognizing "[p]olice officers may rely upon notice from another police department that a person or vehicle is wanted in connection with the investigation of a felony when making a *Terry* stop, even if the [notice] omits the specific articulable facts supporting reasonable suspicion") (internal quotations omitted); *United States v. Grigg*, 498 F.3d 1070, 1081 (9th Cir. 2007) (recognizing police may have reasonable suspicion to believe a person is wanted regarding a past misdemeanor, in appropriate circumstances); *see also United States v. Farnell*, 701 F.3d 256, 262 (8th Cir. 2012). The United States correctly notes that the sole case cited by Defendant in support of his contention, *Delaware v. Prouse*, 440 U.S. 648 (1979), is inapposite. In *Prouse*, the officer did not stop the vehicle based on a wanted issued by another jurisdiction, but rather

decided to conduct a routine stop simply because he "saw the car in the area and wasn't answering any complaints." *Id.* at 650-51.

Further, the officers' actions following the stop did not exceed the purpose of the stop. The case law recognizes that suspicion may reasonably grow over the course of a stop as more information unfolds and more suspicious facts are uncovered. *United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002) (reasonable suspicion to expand scope of traffic stop may arise from a combination of factors). Here Officer Hendricks proceeded in a reasonable, graduated, and expeditious manner, taking each next step only after confirming her reasonable suspicions, and detaining Hicks no longer than was necessary to confirm the suspicions. And the actions taken with respect to Defendant were reasonably necessary for officer safety during the stop.

Nor is the Court persuaded that the stop was unconstitutional because information obtained from an LPR is inherently overbroad and constitutes an impermissible "dragnet." The LPR in the officer's vehicle checked the license plates only of cars that drove along-side and in front of the officer's vehicle. And no action was taken by the officer until she saw the vehicle was wanted in connection with a crime of violence, namely domestic assault first degree, and carried the heading "armed and dangerous." Thereafter, the officer took care to extend the detention no longer than was necessary to confirm that Hicks was the individual wanted, and to safely transport him to the station for further investigation and confirmation.

Defendant's second objection is equally unavailing. Defendant objects to the fact that "the St. Louis Police Department does not confirm arrest warrants until after arriving

5

at a police station with the suspect," and contends that it is "unreasonable for the police to take a citizen to the police station to confirm whether an arrest warrant is still active and valid." (Doc. No. 84.) It is unclear whether Defendant is referencing confirmation of Hicks' warrant, or his own "wanted." Regardless of which he is referencing, however, the objection still fails.

To the extent Defendant is asserting that the stop itself was unlawful prior to confirming that the wanted for Hicks was still active, the Court, as set forth above, finds the argument unpersuasive under *Hensley*. If Defendant is instead contending that it was unreasonable to take Hicks to the station to confirm the "wanted" was still active, the argument is irrelevant. Defendant and Hicks were removed from the car at approximately the same time, and there is no suggestion that the time the officer waited for backup was unreasonable. Thereafter, Defendant's detention was based not on Hicks' wanted, but rather on the fact that Defendant was immediately found to have a firearm on his person, and a computer check showed an outstanding "wanted" for his own arrest. Whatever transpired thereafter with respect to Hicks had no bearing on Defendant's further detention and arrest.

If, on the other hand, Defendant is objecting to the fact that the officers would have taken Defendant to the station to confirm his own "wanted," that simply has no bearing here, as that was not the cause of Defendant's further detention. The record shows that the officer reasonably conducted a pat down for officer safety and located a firearm on Defendant's person and determined there was an outstanding wanted for his arrest. At that time the officers objectively had probable cause to arrest Defendant. In a prompt

6

search of Defendant at the scene, incident to the arrest, the officers found illegal drugs. Any further detention of Defendant was therefore reasonable and lawful under the Fourth Amendment. *See United States v. Powell*, 379 F.3d 520, 524 (8th Cir. 2004) (holding that arresting officers reasonably relied on warrant list and were not required to obtain the actual physical arrest warrant before going to the defendant's home, even though the address the warrant list provided was the wrong address for the man they sought, and therefore drugs found in plain view were admissible against the defendant).

Finally, Defendant objects to the finding by the Magistrate Judge that Defendant "kept touching his right hand pocket even when told not to do so twice by the officer," as the record contains no mention of Officer Christianson ordering Defendant not to touch his right pants pocket. Defendant's objection is well taken from a factual standpoint; the record does not reflect any such verbal directive from Officer Christianson, but does reflect a non-verbal directive. The record shows that the officer asked Defendant to exit the vehicle and as he did so, asked him for his identification. The officer noticed Defendant's hands were shaking uncontrollably when Defendant handed him his identification. The officer noticed that as he stepped out, Defendant patted his right hip. The officer moved Defendant's hand away, and Defendant patted his right hip again,[1] and the officer immediately put him in handcuffs. From his own questioning of the witness at the end of the hearing, it is clear that that is what the Magistrate Judge heard the witness say. And

---

1 The undersigned believes that the word "he" is missing from the transcript. The transcript says "I moved his hand away, patted his right hand again, and I immediately put him in handcuffs." Tr. at 33-34. But the undersigned has listened carefully to the recording of the hearing, and believes the officer said "I moved his hand away, *he* patted his right hand again. . ."

7

the witness confirmed this is what happened with his positive response to the Magistrate Judge's question.[2] Hearing Tr. at 40.

Thus, while it is true that the Magistrate Judge misstated the record somewhat when he stated that the Defendant patted his right hand pocket "even when told not to do so twice by the officer," it does not change the result. From a careful review of the record, including a close review of the audio recording, the Court finds that Defendant patted his right hip; the officer directed him, non-verbally, not to touch his right hip by moving Defendant's hand away; and Defendant nevertheless patted his right hip again; after which the officer immediately placed Defendant in handcuffs. In addition, the Court notes that the officer had received a dispatch to assist in connection with a stop identified as "armed and dangerous," and at the time he approached the passenger, did not know whether the information pertained to the driver or the passenger.

Where, as here, an officer is called to assist with a car stop with a designation of "armed and dangerous," the passenger's hands are shaking uncontrollably when asked for his identification, and the passenger continues to pat his right hip even after the officer moves the passenger's hand away, the Court finds the officer has a reasonable, articulable suspicion that the defendant might be armed and dangerous. And an officer in these circumstances is justified in placing the passenger in handcuffs, for officer safety, and in conducting a pat-down for weapons. *See United States v. Robinson*, 664 F.3d 701, 704

---

2  THE COURT: . . . And I just have one question, Officer Hendricks [sic]. The armed and dangerous along with the hand shaking and the continuing patting of the hip, did that make you think something?
    THE WITNESS: Yes.
    THE COURT: What was that? Concerned about something?
    THE WITNESS: I was concerned he was warmed [sic] with some sort of weapon.

8

(8th Cir. 2011) (holding pat-down search during traffic stop was reasonable where the defendant was wearing baggy pants and continued putting his hands in his pockets after being told not to do so); *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) (recognizing officers may use handcuffs as a reasonable precaution during a *Terry* stop to protect their safety and maintain the status quo); *United States v. Walden*, 146 F.3d 487, 491 (7th Cir. 1998) (holding that information that passenger in stopped vehicle was involved in "gang crime activity" and was an "armed and dangerous" person was sufficient justification for weapons frisk).

Finding Defendant's objections are not well taken, Defendant's motion to suppress shall be denied for the reasons stated in the M&R.

### B. Motion to Dismiss

The Magistrate Judge correctly determined that Defendant's arguments in support of the motion to dismiss the indictment, namely that the charge is an unlawful infringement on Defendant's Second Amendment right to bear arms, and that an allegation that the firearm had previously traveled in interstate commerce is insufficient under the Commerce Clause, are contrary to the controlling case law. Defendant makes plain in his objections that he has no case authority to support his contentions, but objects to the M&R in order to preserve Defendant's ability to appeal based on the issues raised in his motion to dismiss. As such, Defendant's motion to dismiss the indictment is denied for the reasons set forth in the M&R.

Accordingly,

**IT IS HEREBY ORDERED** that the Memorandum and Recommendation of United States Magistrate Judge [Doc. No. 79] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein, with a minor factual amendment.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [Doc. No. 56] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss the Indictment [Doc. No. 57] is **DENIED**.

/s/ Audrey G. Fleissig
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 9th day of June, 2014.